## Case No. 16,731.

### UNITED STATES v. WILSON.

[3 Blatchf. 435.] [1]

Circuit Court, S. D. New York. March 5, 1856.

FEDERAL COURTS—ADMIRALTY JURISDICTION, CIVIL AND CRIMINAL—DESTROYING VESSEL—"HIGH SEAS" DEFINED.

1. The civil jurisdiction of the courts of the United States, in maritime causes of contract or tort, embraces tide-waters within the bays, inlets of the sea and harbors along the sea-coast of the country, and in navigable rivers.

2. But the federal courts of inferior jurisdiction cannot take cognizance of criminal offences of any grade, without the express appointment or direction of positive law.

[Cited in U. S. v. Myers, Case No. 15,847; U. S. v. Plumer, Id. 16,056; U. S. v. Lewis, 36 Fed. 450.]

3. Under section 1 of the act of March 26, 1804 (2 Stat. 290), prescribing punishment for the offence of wilfully destroying a vessel, it is necessary, in order to give to this court jurisdiction of the offence, that it should have been committed upon the high seas, and not merely upon waters within the jurisdiction of the United States.

4. Congress, in its criminal legislation, uses the term high seas in its popular and natural

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

sense, and in contradistinction to mere tide-waters flowing in ports. havens and basins, that are land-locked in their position and subject to territorial jurisdiction.
[Cited in Miller's Case, Case No. 9.558; Ex parte Byers. 32 Fed. 406. Cited in dissenting opinion in U. S. v. Rodgers, 14 Sup. Ct. 116, 150 U. S. 268.]

This was an indictment for a capital offence, charging that the prisoner [George Wilson], who was a colored man, being a mariner, belonging to the schooner Eudora Imogene, which vessel was not owned in whole or in part by him, and was the property of Asa R. Shaifer and others, citizens of the United States, did, on the 23d of November, 1855, on the high seas, and within the jurisdiction of this court, feloniously, wilfully. and corruptly destroy the said vessel, (specifying the means and manner by which the act was committed). The indictment varied the statement of the crime, in different counts, but the charge was substantially the same in all. The prisoner demurred to the indictment.

Philip J. Joachimsen. for the United States.
William T. B. Milliken, for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge.· The indictment in this case is founded upon the act of congress, approved March 26, 1804 (2 Stat. 290), entitled "An act in addition to the act entitled 'An act for the punishment of certain crimes against the United States,'" by the 1st section of which it is enacted, that any person, not being an owner. who shall, on the high seas, wilfully and corruptly cast away, burn, or otherwise destroy any ship or other vessel unto which he belongeth, being the property of any citizen or citizens of the United States, or procure the same to be done, and being thereof lawfully convicted, shall suffer death.

The fact charged against the prisoner is admitted by his demurrer to the indictment; and, it being conceded, on the part of the United States, that the vessel was destroyed in the East river or western extremity of Long Island Sound, at a point between City Island and Hart Island, within the territorial limits of the town of Pelham, in the county of Westchester and state of New York, and accordingly within the jurisdiction of that state, the question raised by the demurrer is, whether the place where the act was done is within the criminal jurisdiction of the federal courts. We assume it as a notorious geographical fact, that the breadth of water at that place, from Long Island on the south to the main land on the north shore, is not beyond the reach of ordinary eyesight. and does not exceed two miles. That point was not in controversy on the argument, and therefore we have not called for specific evidence to fix the distance.

The constitution of the United States declares (article 3, § 2), that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction;" and it is now indisputable that, by force of the constitutional provision, the civil jurisdiction of the courts of the United States, in maritime causes of contract or tort, embraces tide-waters within the bays. inlets of the sea and harbors along the sea-coast of the country, and in navigable rivers. The Thomas Jefferson, 10 Wheat. [23 U. S.] 428; The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175; U. S. v. Coombs, 12 Pet. [37 U. S.] 72; Waring v. Clarke, 5 How. [46 U. S.] 441; N. J. Steam Nav. Co. v. Merchants' Bank. 6 How. [47 U. S.] 344. But it is a fundamental doctrine, in respect to the federal courts of inferior jurisdiction, that they cannot take cognizance of criminal offences of any grade, without the express appointment or direction of positive law. To enable them to exercise the functions bestowed by the constitution over crimes and misdemeanors, there must be a designation, by positive law, both of the offence and of the tribunal which shall take cognizance of it. U. S. v. Hudson, 7 Cranch [11 U. S.] 32; Ex parte Bollman, 4 Cranch [8 U. S.] 75; U. S. v. Coolidge, 1 Wheat. [14 U. S.] 415; Wharton, Cr. Law, 76–80. Congress has, by the statute referred to, defined the crime of destroying a vessel. The act must be done wilfully and feloniously, by a person not an owner, and on the high seas. The place where the offence is committed becomes, thus. an essential element in the description of the crime. The mere fact that the accused wilfully destroyed the vessel, being upon waters within the jurisdiction of the United States, does not subject him to prosecution and punishment under this act, unless the vessel was at the time on the high seas.

It is no doubt within the competency of congress to bring all waters subject to federal jurisdiction within the scope of its criminal jurisprudence. This is manifestly the doctrine declared by the supreme court in the cases of U. S. v. Bevans, 3 Wheat. [16 U. S.] 336, and U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76. But the power is regarded as dormant unless exercised by direct enactments of law. It is not enough that a felony of the highest enormity is charged in the indictment, or that the laws of the United States denounce it as a capital crime, and subject it to trial and judgment in the national courts; but it must further be manifest that the place where the transaction occurred is designated by legislative enactment as one over which this authority may be exercised by the court. Thus, any person committing murder on board an American vessel in bays, harbors, basins, or rivers, not within the jurisdiction of any state of the Union, is triable in the courts of the United States, and punishable therefor, the same as

if the crime were committed upon the high seas. Act April 30, 1790, § 8 (1 Stat. 113). But he cannot be punished for manslaughter committed elsewhere than upon the high seas, because the 12th section of the act of April 30, 1790, extends only to that offence when committed in that locality. U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76. Place is made, by the statute, an essential ingredient in the offence; and, if the locus in quo specified in the indictment, is not, in a legal sense, the high seas, this court has no jurisdiction over the charge. U. S. v. Furlong, 5 Wheat. [18 U. S.] 184.

There is less precision in the use of the term high seas in reference to the jurisdiction of maritime courts in civil actions, than in cases of a criminal character, because, in the former, it is immaterial to the authority of the court whether the transaction be on the open ocean, or on inland waters subject to the ebb and flow of the tide. In those cases, it might be immaterial whether tide-waters were or were not universally denominated high seas, neither the rights of the parties nor the power of the court being affected by the appellation. In the construction of criminal law, greater exactness and certainty are demanded, and words must be interpreted so as to carry out clearly the intention of the law-maker.

It appears to us very manifest, that congress, prior and subsequently to the enactment under consideration, has, in its criminal legislation, sedulously evinced the intention to use the term high seas in its popular and natural sense, and in contradistinction to mere tide-waters flowing in ports, havens and basins. Thus, in the 8th section of the act of April 30, 1790, and in the 4th, 5th, 6th, 7th, 8th, and 11th sections of the act of March 3, 1825 (4 Stat. 115, 116, 117), high seas are discriminated from rivers, havens, basins and bays, which are not within any state in the Union, all the enactments importing unequivocally the meaning of congress, that the term high seas alone embraces no waters that are land-locked in their position, and are subject to territorial jurisdiction.

The adjudications already cited from the supreme court affirm that to be the legal import and effect of the language; and the more labored and erudite elucidations made by inferior courts show that construction to be in consonance with the principles of general jurisprudence. U. S. v. Grush [Case No. 15,268]; The Harriet [Id. 6,099]; Thomas v. Lane [Id. 13,902]. In U. S. v. Robinson [Id. 16,176], Judge Story applied the doctrine to the act now under consideration, and held that a bay in the island of Bermuda, where an American vessel had been feloniously burned and destroyed, was not on the high seas, within the purview of the statute in question.

We are of opinion, upon a careful consideration of the subject, that the offence charged in this indictment is not, within the purview of the act of March 26th, 1804, cognizable by this court, and that, accordingly, judgment must be rendered for the prisoner. The prisoner will be remitted by the marshal to the custody of the proper state authority by which he was detained when he was arrested on this indictment.